IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHNATHAN HATCH, et al., | ) | |
| *on behalf of themselves and others similarly situated*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:16CV925 |
| | ) | |
| MICHAEL A. DEMAYO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiffs initiated this action alleging that the above-named Defendants violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.* (ECF No. 1.) Before the Court are two motions to dismiss Plaintiffs' Second Amended Complaint, one filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, (ECF No. 113), and the other filed pursuant to Rule 12(b)(6) only, (ECF No. 111).[1] For the reasons set forth below, these motions will be granted in part and denied in part.

## I.    BACKGROUND

---

[1] The motions to dismiss are brought by two distinct groups of defendants. One group, which consists of Mark I. Farbman and Mark Farbman, P.A., refers to itself in its motion as the "Fox Defendants." (*see* ECF No. 113 at 1.) For clarity, however, the Court will instead refer to this group as the "Farbman Defendants" in keeping with naming conventions the Court has previously used in this case. (*See generally* ECF No. 35). The remaining Defendants consist of the following attorneys and law firms: Michael A. DeMayo; the Law Offices of Michael A. DeMayo, P.C.; the Law Offices of Michael A. DeMayo, L.L.P.; Jason E. Taylor; Law Offices of Jason E. Taylor, P.C.; Benjamin T. Cochran; Hardison & Cochran, PLLC; Carl B. Nagle; Nagle & Associates, P.A.; John Gelshenen; Davis & Gelshenen, LLP; Ted A. Greve; Ted A. Greve & Associates, P.A.; Christopher T. May; and Estwanik and May, PLLC. (ECF No. 111 at 1.) Again, in keeping with earlier naming conventions, (*see generally* ECF No. 35), the Court will refer to this group as the "DeMayo Defendants."

The Court first incorporates by reference the factual background set forth in its August 13, 2020 Memorandum Opinion and Order denying class certification. (*See* ECF No. 200 at 1–3.) In addition, the Court will briefly summarize the procedural history that has led to the current posture.

Plaintiffs filed their initial Complaint on July 8, 2016, (ECF No. 1), and later filed their First Amended Complaint on July 29, 2016, (ECF No. 5). On October 4, 2016, Defendants filed two separate motions to dismiss Plaintiffs' First Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim. (ECF No. 35 at 4 (citing ECF Nos. 21; 23).) The Court denied both motions. (*Id.* at 2.) On October 23, 2019, Plaintiffs filed a Second Amended Complaint. (ECF No. 100.) Farbman Defendants now move to dismiss Plaintiff's Second Amended Complaint for lack of standing, among other things, pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 113.) DeMayo Defendants additionally move to dismiss the Second Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6).[2] (ECF No. 111.)

Before considering each motion, it is useful to outline the differences between the First and Second Amended Complaints. When Plaintiffs requested leave to file the Second Amended Complaint, they identified three goals: "(1) to streamline the class definition; (2) to substitute a new class representative (with Defendants' consent); and (3) to add a claim for punitive damages." (ECF No. 97 at 2.) Aside from these changes, Plaintiffs did not alter the

---

[2] At the time the Second Amended Complaint and the Motion to Dismiss currently before the Court were filed, Plaintiffs were additionally seeking to bring this action on behalf of a class. (*See* ECF Nos. 100 ¶¶ 73–80; 104.) As noted, the Court has since denied class certification, (*see* ECF No. 200), and thus does not address arguments arising exclusively out of such claims.

facts alleged nor their claims in any significant way. (*Compare* ECF No. 5, *with* ECF No. 100; *see also* ECF No. 97-2 at 27–29 (tracking proposed changes between the two versions of the Complaint).) Therefore, as detailed below, much of the operative language the Court relied upon in denying Defendants' previous motions to dismiss remains in the Second Amended Complaint.

## II. FARBMAN DEFENDANTS' MOTION TO DISMISS

Farbman Defendants contend that (1) Plaintiffs have not sufficiently alleged an Article III injury-in-fact; (2) Plaintiffs are not entitled to recover liquidated damages because they have not pleaded an economic loss; and (3) Plaintiffs lack standing to pursue injunctive relief. (ECF No. 114 at 4, 14, 18.) They "bring both a facial challenge and factual challenge to Plaintiffs' standing" and thus urge the Court to "look[] at evidence beyond the pleadings" in considering these issues. (*Id.* at 5.)

### A. Article III Standing

Farbman Defendants charge that Plaintiffs' Second Amended Complaint rests on a "new" and "novel theory of injury" which is "at odds with the basis on which this Court denied Defendants' earlier motion to dismiss for lack of standing." (*Id.* at 1, 10.) More specifically, Farbman Defendants argue that "some of the Plaintiffs" now claim "that their only claimed injury is the mere violation of the DPPA." (*Id.* at 6.) Such injuries, they argue, are "bare statutory violations" that do not satisfy Article III's injury-in-fact requirement. (*Id.* at 6–9.)

The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution. U.S. Const. art. III, § 2. Standing to sue, therefore,

"ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish constitutional standing at the motion to dismiss stage, Plaintiffs must plausibly allege that they have: "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To establish an injury-in-fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court held in *Spokeo* that "intangible injuries can . . . be concrete" but specifically rejected the idea that the violation of a statute "automatically satisfies the injury-in-fact requirement" on its own when merely a "bare procedural violation" has occurred. *Id.* at 1549. The Court did note, however, that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury-in-fact," and, in these instances, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* To determine whether a statutory violation is the type of violation that meets this bar, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*

In addition to lodging a facial challenge to Plaintiffs' standing, Farbman Defendants seek to take advantage of the evidentiary development of the case to mount a factual challenge

as well.  (ECF No. 114 at 5.)   In a facial challenge, the facts alleged in the complaint are generally regarded as true and the plaintiff is entitled to the same protections available under a Rule 12(b)(6) motion.[3]  *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).   When a defendant, however, challenges "the veracity of facts underpinning subject matter jurisdiction," they make a factual challenge.  *Kerns v. U.S.*, 585 F.3d 187, 193 (4th Cir. 2009).  In a factual challenge, a court may go beyond the complaint's mere allegations and consider whether facts that have been developed in evidentiary proceedings are plausible to support the plaintiff's pleading.  *Id.*  In such a case, "the presumption of truthfulness normally accorded a complaint's allegations does not apply," *id.* at 192, and "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence," *U.S. ex rel Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

The Court will first consider Farbman Defendants' facial challenge.

(i.)     *Facial Challenge*

As outlined above, this Court earlier addressed—and rejected—a facial challenge to Plaintiffs' Article III standing in an order dated September 29, 2017, denying motions to dismiss Plaintiffs' First Amended Complaint.  (ECF No. 35 at 2.)  The Court concluded that the allegations of injury stemming from Defendants' alleged obtainment, use, or disclosure of DPPA-protected information in the First Amended Complaint were sufficiently concrete to plausibly support Article III standing.  (*Id.* at 9.)  Farbman Defendants charge, however, that

---

[3] A motion to dismiss filed pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  To survive, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiffs' Second Amended Complaint rests on a "new theory" that is "at odds with the basis on which this Court denied Defendants' earlier motion to dismiss for lack of standing." (ECF No. 114 at 10.)

Before looking at the allegations of the Second Amended Complaint, it is first necessary to recount the basis for this Court's previous ruling. The Court concluded that Plaintiffs plausibly alleged the existence of concrete harm sufficient to meet the injury-in-fact requirement by asserting "that Defendants obtained, disclosed, and used their protected personal information, without consent or permission, for marketing and solicitation of their legal services." (ECF No. 35 at 11 (citing ECF No. 5 ¶¶ 78–86).) The Court identified the following passage in the First Amended Complaint as the basis for this conclusion:

> [a]s a direct and proximate result of the acts and conduct and DPPA violations by Defendants[,] . . . Plaintiffs . . . have suffered damage to their respective privacy rights and interests protected by the DPPA when personal information from a motor vehicle record, as defined by the DPPA, was obtained, disclosed or used by Defendants without consent or permission.

(*Id.* at 8 (quoting ECF No. 5 ¶ 86).)

This exact language, as well as the entire section the Court cited, is repeated verbatim in Plaintiffs' Second Amended Complaint. (*Compare* ECF No. 5 ¶¶ 78–86, *with* ECF No. 100 ¶¶ 82–90; *see also* ECF No. 97-2 at 27–28.) Farbman Defendants correctly note that Plaintiffs have altered their class definition in the Second Amended Complaint to include the "mere obtainment" of protected personal information. (*See* ECF No. 114 at 10.) However, such a change does not undermine the sufficiency of Plaintiffs' claims which this Court has already concluded provide an adequate basis to withstand a motion to dismiss. This is especially so given that the Court has denied class certification and does not consider Plaintiffs' proposed

class definitions in deciding whether a plausible injury has been alleged. Thus, the Court concludes that the allegations in Plaintiffs' Second Amended Complaint are likewise sufficient to defeat a facial challenge.

Even assuming *arguendo* that Plaintiffs were to allege only an obtainment violation, the weight of case law supports the argument that they still have established a concrete injury-in-fact. In determining whether a harm rises above a bare procedural violation, the Fourth Circuit has adopted the D.C. Circuit's test that asks whether a statute was violated and, if so, whether the defendant "suffers, by [the violation of the statute], the type of harm *Congress sought to prevent*." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345–46 (4th Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)) (emphasis supplied by the Fourth Circuit).

In this case, Plaintiffs are able to demonstrate that the harm that allegedly resulted from any unlawful obtainment of their information alone was the type of harm Congress intended to prevent. The U.S. Supreme Court has held that one "important objective of the DPPA" was "to restrict disclosure of personal information contained in motor vehicle records to businesses for the purpose of direct marketing and solicitation." *Maracich v. Spears*, 570 U.S. 48, 66–67 (2013). The Court also found that "Congress chose to protect individual privacy by requiring a state DMV to obtain the license holder's express consent before permitting the disclosure, *acquisition*, and use of personal information for bulk solicitation." *Id.* at 67 (emphasis added).

Additionally, the Fourth Circuit has applied *Dreher*'s test liberally in the context of privacy-related violations, holding that when a harm "is both particular to each person and

7

imposes a concrete burden on his privacy, it is sufficient to confer standing." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (discussing at what point alleged violations of the Telephone Consumer Protection Act became a cognizable, concrete injury). Otherwise, the court held, the analysis becomes "nothing more than an attempt to dismember the [statute], converting a simple remedial scheme into a fact-intensive quarrel over how long a party was on the line or how irritated it felt when the phone rang." *Id.*

At least one court that specifically addressed whether an attorney might lawfully use motor vehicle records to solicit clients has additionally held that obtainment under the DPPA is sufficient on its own to amount to an injury-in-fact. *Whitaker v. Appriss, Inc.*, 229 F. Supp. 3d 809, 817 (N.D. Ind. 2017) (holding that "DPPA standing begins at least at the point of unlawful disclosure or obtainment of the plaintiffs' personal information"). Whereas *Spokeo* noted the harmlessness of an incorrect zip code, the court in *Whitaker* found an analogous harmless DPPA violation would be the disclosure of a person's first name alone which "might violate the letter of the DPPA, but it presents no actual risk to privacy." *Id.* at 814. However, when records are acquired that combine several personal facts together, a harm has been realized. In the words of the court, Congress made the judgment that, "once a plaintiff's information is disclosed or obtained for a prohibited purpose, the damage is already done." *Id.* at 815.

Thus, the Court finds that Plaintiffs, in their Second Amended Complaint, plausibly allege sufficient facts to withstand a facial challenge to their standing.

*(ii.)* *Factual Challenge*

Farbman Defendants additionally raise a factual challenge to Plaintiffs' standing. As outlined above, when a defendant makes a factual challenge, a court may go beyond the complaint's mere allegations and consider whether facts that have been developed in evidentiary proceedings plausibly support the plaintiff's pleading. *Kerns*, 585 F.3d at 193. In such a case, "the presumption of truthfulness normally accorded a complaint's allegations does not apply," *id.* at 192, and "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence," *U.S. ex rel Vuyyuru*, 555 F.3d at 347.

Since the First Amended Complaint was filed, the Parties have developed the evidentiary basis through a series of depositions. Farbman Defendants allege that, under the current record, Plaintiffs have not met their burden of establishing facts that would plausibly allege a concrete injury. To begin, they argue that Plaintiffs have testified that "they weren't injured when Defendants received the accident reports publicized by the law enforcement agencies" and thus any "allegation of invasion of privacy is . . . non-existent." (ECF No. 114 at 11.) Further, Farbman Defendants argue that Plaintiffs have "admitted that such obtainment is not a violation of privacy" given that Plaintiffs' names and addresses were "public information, available across the internet to anyone who cares to look." (*Id.* at 12.)

The common thread in these statements is an attempt to isolate the harm that follows from the obtainment of protected information alone. As the Court has already concluded, however, Plaintiffs allege more than obtainment in their Second Amended Complaint. Thus, the question is whether there is a factual basis to support the broader claim that "Defendants obtained, disclosed, and used [Plaintiffs'] protected personal information, without consent or

9

permission, for marketing and solicitation of their legal services." (ECF No. 35 at 11 (citing ECF No. 5 ¶¶ 78–86).)

The Court finds that Plaintiffs are able to carry this burden in two ways. First, Plaintiffs offer deposition testimony alleging the obtainment of protected personal information as well as its use through marketing materials mailed to their residences following their accidents. (*See, e.g.*, ECF Nos. 130-9 at 24 (Plaintiff Hatch stating that his privacy "was invaded when [personal information] was actually . . . obtained and used for marketing purposes"); 130-8 at 29; (Plaintiff Dvorsky stating that he was injured "[m]entally, thinking that my information's out and people have used it, receiving these mailings and not knowing how"); 130-3 at 5–6 (Plaintiff Epperson describing his reason for filing a lawsuit as a "bombardment" of mailers "at a time that I was vulnerable").) Second, Plaintiffs provide photocopies of alleged marketing materials addressed to Plaintiffs by Defendants. (*See, e.g.*, ECF No. 100-3.) Thus, given the Court's conclusion that the obtainment and use of DPPA-protected information is sufficient to set forth a concrete injury, it also finds that this evidence alleges facts sufficient to support Plaintiffs' claims and thus provide a basis to withstand a factual challenge to standing as well.

The remaining two elements of the standing analysis are not in dispute, and thus the Court concludes that Plaintiffs have plausibly alleged and demonstrated sufficient facts to support standing to sue under the DPPA at this stage in the litigation. Accordingly, Farbman Defendants' Motion to Dismiss for lack of standing will be denied.[4]

---

[4] Farbman Defendants additionally stress that some of the information they obtained was publicly available through other sources. (*See* ECF No. 114 at 12 ("After all, the information that Defendants allegedly obtained—Plaintiffs' names and addresses—is not even private information.").) Even so, Plaintiffs have

## B. Liquidated Damages

Farbman Defendants next argue that Plaintiffs are not entitled to liquidated damages. (ECF No. 114 at 14.)  First, they contend that Plaintiffs "concede" this issue because Plaintiffs' response to Farbman Defendants' motion to dismiss does not "contest[] the point or offer[] any argument in rebuttal."  (ECF No. 148 at 1.)  However, even when a court must accept a certain set of factual allegations in a motion to dismiss arising under Rule 12(b)(6), it is "not so bound with respect to its legal conclusions."  *District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1979) ("Were it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint.").  Thus, while the Court will assume the truth of any uncontested facts on this issue in favor of Defendants, the Court must independently determine whether Defendants are entitled to judgment as a matter of law.

Farbman Defendants contend that Plaintiffs "cannot recover liquidated damages under the DPPA without first proving that [they have] suffered pecuniary or economic harm."  (ECF No. 114 at 14.)  They base this contention on the text of the statute, (*see generally id.* at 14–18), which states that "[t]he court may award—(1) actual damages, but not less than liquidated damages in the amount of $2,500," 18 U.S.C. § 2724(b).  Farbman Defendants urge the Court to find that this language is "modeled on the Privacy Act of 1974" and to hold that Supreme

---

produced evidence to demonstrate that Farbman Defendants have obtained additional information beyond the names and addresses of Plaintiffs and incorporated them into their marketing materials.  This includes, at minimum, driver's license numbers, telephone numbers, and medical information describing injuries, (*see* ECF No 100-3 at 8–10), each of which are expressly enumerated in the definition of "personal information" the DPPA protects, 18 U.S.C. § 2725(3).  Farbman Defendants have failed to show that this additional information is otherwise public.  Thus, the Court need not decide either whether Plaintiffs' names and addresses are public information or, if so, whether such a fact has any bearing on the sufficiency of the alleged injury.

Court precedent on the Privacy's Act "parallel provision" is controlling.[5]  (ECF No. 114 at 16.)  This interpretation, however, is unpersuasive.

It is true that the Supreme Court has held that, under the Privacy Act, "presumed damages are . . . clearly unavailable" and that a plaintiff is not entitled to the Act's express minimum amount of damages on "proof of nothing more than a statutory violation."  *Doe v. Chao*, 540 U.S. 614, 620–22 (2004).  However, leaving aside for now whether Plaintiffs in this case have alleged more than a statutory violation, the Court was clear that this interpretation relied on "the critical limiting phrase 'entitled to recovery,'" *id.* at 626, which does not appear in the corresponding text of the DPPA, *see* 18 U.S.C. § 2724(b)(1).

On the other hand, multiple circuits have concluded that liquidated damages are available under the DPPA even when plaintiffs have not pled an economic loss. For instance, the Eleventh Circuit was unequivocal in finding that "a plaintiff need not prove actual damages to recover liquidated damages for a violation of the DPPA." *Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1210, 1214 (11th Cir. 2005) (noting that dicta in *Doe* suggested that a statute with language similar to the DPPA would not require proof of actual damages as a prerequisite to recovery).  As the court pointed out, "[d]amages for a violation of an individual's privacy are

---

[5] The parallel provision in the Privacy Act reads as follows:

> (4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--
>> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000;

5 U.S.C. § 552a(g)(3)(B)(4).

12

a quintessential example of damages that are uncertain and possibly unmeasurable." *Id.* at 1213. The Third Circuit agreed, finding that "[t]he plain language of the DPPA, Supreme Court and other precedent, and the common law of privacy all support construing § 2724(b) so as not to require actual damages to recover liquidated damages." *Pichler v. UNITE*, 542 F.3d 380, 400 (3d Cir. 2008).

While the Fourth Circuit has not issued a direct ruling on this question, it has weighed in, albeit in dicta. In *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009), the court considered whether statutory damages could be permitted with no proof of actual damages under the Stored Communications Act ("SCA"). *Id.* at 201-02. Although the court held that actual damages must be pled in the SCA (and the Privacy Act), it expressly distinguished those statutes from the DPPA and suggested similar analysis of the DPPA would end in the opposite result. *Id.* at 205-06 (citing the DPPA as an example of a "simpler, unambiguous statute").

In light of the above, the Court finds that Plaintiffs' pleadings are sufficient to seek liquidated damages without the pleading of actual damages. Accordingly, Defendants are not entitled to judgment as a matter of law on this issue.

## C. Injunctive Relief

In their Second Amended Complaint, Plaintiffs request "a permanent injunction prohibiting Defendants from obtaining or using personal information from motor vehicle records for marketing purposes." (ECF No. 100 ¶ 92.) In support of this request, Plaintiffs allege that Defendants are still using DPPA-protected information in violation of the statute and that they are likely to continue to do so. (*Id.* ¶ 89; *see also* ECF No. 140 at 22 ("Even today,

six of the eight sets of Defendants continue their unlawful mailing campaigns.").) They base this claim for relief on the DPPA's provision in § 2724(b)(4) that provides for "other preliminary and equitable relief" deemed appropriate by the Court. (ECF No. 100 ¶ 92.)

As Farbman Defendants point out, the Fourth Circuit has held that the "standing requirement applies to each claim that a plaintiff seeks to press." *Bostic v. Schaefer,* 760 F.3d 352, 370 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). This means that a plaintiff must also "demonstrate standing separately for each form of relief sought." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 230 (4th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). Any party who seeks to establish standing "must include the necessary factual allegations in the pleading, or else the case must be dismissed." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

To successfully plead for injunctive relief, a plaintiff "must establish an ongoing or future injury in fact," *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)), and "may not rely on prior harms," *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (citation omitted). This injury must also be "imminent" or "certainly impending." *Griffin v. Dept. of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) and *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

In their Omnibus Response in Opposition to Defendants' Motion to Dismiss Second Amended Complaint, Plaintiffs allege that "the next time a plaintiff is involved in a reportable motor vehicle collision in North Carolina, it is virtually certain that DPPA-protected personal

14

information in his or her accident report will be 'obtained' by certain Defendants in connection with their marketing campaigns" and used as well "if he/she meets a Defendant's mailing criteria." (ECF No. 140 at 22.) The likelihood of such a scenario, however, is remote and speculative. As one Plaintiff testified, "this [was] the first [accident] I've really ever been involved in," (ECF No. 130-3 at 5). Even when a Plaintiff had been in multiple accidents, he described receiving marketing materials as atypical. (*See, e.g.*, ECF No. 130-8 at 9 (stating that, following a previous accident and speeding ticket, Plaintiff Dvorsky "never got any letters from a lawyer.").)

There is no other showing either in the Second Amended Complaint or in Plaintiffs' Omnibus Response that any of the three plaintiffs are subject to any "imminent" or "certainly impending" harm, (*see generally* ECF Nos. 100, 140), and no dispute as to any material facts. Thus, the Court finds that Plaintiffs have failed to meet their burden in support of this allegation and must therefore grant the motion to dismiss Plaintiffs' claim for injunctive relief.

### D. Conclusion

With respect to Farbman Defendants' motion to dismiss, the Court concludes that Plaintiffs have established sufficient facts necessary to plausibly allege standing to sue under the DPPA and withstand Farbman Defendants' facial and factual challenges. They may also be entitled to liquidated damages without pleading a pecuniary loss. However, the Court also concludes that the Plaintiffs have failed to establish sufficient facts to plausibly allege standing for injunctive relief. Accordingly, Farbman Defendants' motion to dismiss Plaintiffs' Second Amended Complaint for lack of standing under Rules 12(b)(1) and 12(b)(6) will be granted in part and denied in part. It will be granted as to the dismissal of Plaintiffs' claim for injunctive

relief.  It will be denied as to whether, at this stage, Plaintiffs have plausibly alleged Article III standing and are able to seek liquidated damages.

## III.    DEMAYO DEFENDANTS' MOTION TO DISMISS

DeMayo Defendants contend that "Plaintiffs' Complaint fails to state a claim because Defendants did not violate the DPPA" and advance three distinct arguments in support of this contention.  (ECF No. 112 at 6–7.)  First, they contend that there is no liability under the DPPA unless "[t]he record containing [a plaintiff's] personal information is issued by a 'State department of motor vehicles.'"  (*Id.* at 6.)  They assert that "Defendant law firms obtained records only from local law enforcement crash reports and not from records issued by the NCDMV."  (*Id.* at 7.)  Second, they argue that the DMV-349 "is a public record under North Carolina law and specifically excluded from the DPPA."  (*Id.*)  Third, and finally, DeMayo Defendants argue that liability under the DPPA only attaches when a defendant "obtains, discloses or uses personal information from the [motor vehicle] record."  (*Id.* at 6.)  They contend, however, that "neither the DMV-349 nor a driver's license card or registration paper is a 'motor vehicle record' as defined by the DPPA when they are in the possession of the motorist."  (*Id.* at 7.)  The Court will consider each of these claims in order.

### A.    Direct Obtainment from a State Motor Vehicle Agency

DeMayo Defendants first urge the Court to find that "[t]here is no violation of the DPPA unless the Defendants obtained the alleged personal information directly from a record issued by the NCDMV."  (*Id.* at 8.)  Both sets of Defendants made similar arguments in their first motions to dismiss, contending, among other things, that "the lawful source of the information was local law enforcement, precluding application of the DPPA."  (*See, e.g.,* ECF

16

No. 24 at 21.)  The Court, however, rejected this argument and concluded that "the DPPA covers information knowingly disclosed by a state DMV *as well as* information that is knowingly obtained, disclosed, or used by any person."  (ECF No. 35 at 16.)  Pointing to the "precise language of the DPPA," the Court concluded that nothing in the statute "limit[s] liability in the manner argued by Defendants."  (*Id.*)

DeMayo Defendants advance largely the same arguments in the motion to dismiss currently before the Court.  First, they focus again on the final few words of the "motor vehicle record" definition found in the DPPA, stating that the term "is limited to 'any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card *issued by a department of motor vehicles*."  (ECF No. 112 at 8 (citing 18 U.S.C. § 2725(1) (emphasis added by DeMayo Defendants))).  Stressing that the Court "must construe the statute so that no part is inoperative, superfluous, void, or insignificant," DeMayo Defendants insist that these words require entities to obtain information directly from the state department of motor vehicles in order to violate the statute.  (*Id.*)

However, when "assessing for plain meaning, '[w]e do not . . . [consider] statutory phrases in isolation; we read statutes as a whole.'"  *United States v. Mitchell*, 518 F.3d 230, 234 (4th Cir. 2008) (citations and quotations omitted) (alterations in original).  Here, the DPPA has an entire subsection related to the "[r]esale and redisclosure" of personal information that outlines restrictions for any "authorized recipient" of DPPA-protected information.  *See* 18 U.S.C. § 2721(c) (permitting resale or redisclosure "only for a use permitted under subsection (b)" outside of two exceptions not currently before the Court).[6]  Given that this subsection

---

[6] 18 U.S.C. § 2721(c) reads in full:

17

specifically addresses how an entity may use personal information after it has been lawfully disclosed by a state DMV, such a subsection would be inoperative had Congress not intended to protect such information after it left a state agency. As it stands, the subsection is more plausibly read as ensuring that certain pieces of information originating from a DMV maintain their character through subsequent recipients and are thus protected regardless of the holder.

DeMayo Defendants' increased focus on legislative history is similarly undermined by this subsection. DeMayo Defendants now contend that the removal of the word "derived" from an earlier draft of the DPPA means "that the information must come directly, rather than indirectly, from a record issued by the DMV." (ECF No. 112 at 9.) However, given that the resale and redisclosure subsection of 18 U.S.C. § 2721(c) is not only present in the statute's final text but also appears to have been added at later stages in the drafting process, (*see* ECF No. 148-3), it is more natural to read § 2721(c) as rendering the word "derived" unnecessary than it is to assume such a concept was disfavored.

Additionally, as the Court has previously concluded in this case, "the DPPA was enacted by Congress in 1994 to address two specific concerns: (i) 'a growing threat from stalkers and criminals who could acquire personal information from state DMVs'; and (ii) 'the

---

c) Resale or redisclosure.--An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b) (11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or redisclose personal information pursuant to subsection (b)(12). Any authorized recipient (except a recipient under subsection (b)(11)) that resells or rediscloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request.

18

States' common practice of selling personal information to businesses engaged in direct marketing and solicitation.'" (ECF No. 35 at 10 (citing and quoting *Maracich*, 570 U.S. at 57 (2013).) It is hard to imagine how these goals would be achieved if a lawful recipient of personal information could then take that information and freely resell it to the highest bidder. As the Supreme Court held in *Maracich*, "[i]f the statute were to operate [in such a way], obtaining personal information for one permissible use would entitle attorneys to use that same information at a later date for any other purpose." *Maracich*, 570 U.S. at 74 (noting that in this scenario "a lawyer could obtain personal information to locate witnesses for a lawsuit and then use those same names and addresses later to send direct marketing letters about a book he wrote").

Finally, DeMayo Defendants highlight several cases, including some decided after the first motion to dismiss was denied, to support the proposition that "[l]iability under the DPPA occurs upon receipt and disclosure of information *from a state DMV **only**.*" (ECF No. 112 at 9 (quoting *Siegler v. Best Buy Co. of Minnesota, Inc.*, 2012 WL 12895397 (S.D. Fla. June 12, 2012) (emphasis added by DeMayo Defendants).) However, the case law that is binding on this Court has not changed. In deciding whether the DPPA applied only to state agencies, the Supreme Court held that the Act "regulates the universe of entities that participate as suppliers to the market for motor vehicle information—the States as initial suppliers of the information in interstate commerce and private resellers or redisclosers of that information in commerce." *Reno v. Condon*, 528 U.S. 141, 151 (2000).

In light of the above, the Court concludes as it did earlier, (*see* ECF No. 35 at 16), that Plaintiffs need not provide evidence that Defendants obtained protected personal information

directly from the NCDMV in order to plausibly state a claim for which relief may be granted under the DPPA.

## B. Public Record Exception

Next, DeMayo Defendants argue that their "obtaining, using, and disclosing alleged personal information is exempt" under a "public records exemption" in the DPPA. (ECF No. 112 at 20.) They contend that the source for such an exception is 18 U.S.C. § 2721(b)(14). This subsection states that personal information may be disclosed "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). They additionally contend that "[a]ccident reports are 'specifically authorized' under North Carolina law for disclosure" given that such reports are listed as "public records" in N.C. Gen. Stat. § 20-166.1(i). (ECF No. 112 at 20.)

This echoes previous arguments this Court rejected in denying Defendants' first motions to dismiss. (ECF Nos. 22 at 32; 24 at 25–26.) In that opinion, the Court concluded that "[t]o the extent that the above exceptions allow law enforcement agencies to use or disclose Plaintiffs' personal information, neither exception immunizes liability for Defendants' alleged disclosure of personal information for marketing or solicitation purposes." (ECF No. 35 at 20 (discussing the exceptions in (b)(1) and (b)(14) in relation to the North Carolina statute).) Further, "to the extent that DPPA exceptions described in 18 U.S.C. §§ 2721(b)(1) and (b)(14) may apply to law enforcement agencies, such exceptions do not apply to the alleged conduct of Defendant attorneys and law firms in the present action." (*Id.* (citation omitted).)

Additionally, the Supreme Court has thus far been unwilling to extend the permissible uses of personal information under the DPPA to attorney solicitation when not expressly authorized.  In considering the DPPA's litigation exception in § 2721(b)(4), the Court held that "Congress was aware that personal information from motor vehicle records could be used for solicitation, and it permitted it in circumstances that it defined, with the specific safeguard of consent by the person contacted." *Maracich*, 570 U.S. at 65.  Thus, the Court found that "the absence of the term 'solicitation' in [the subsection] is telling." *Id.*  It further held that "[t]he importance of the consent requirement [for purposes of bulk solicitation] is highlighted by Congress' decision in 1999 to change the statutory mechanism that allowed individuals protected by the Act to opt out to one requiring them to opt in." *Id.* at 67.

The Court made clear that its holding was limited to DPPA liability under (b)(4) and was careful to note that it made no decision as to the "whether solicitation would be permitted conduct" under other subsections. *Id.* at 77–78.  Yet, its reasoning regarding the nature of the DPPA exceptions and their relation to attorney solicitations provides meaningful guidance in this case.  As in (b)(4), the (b)(14) exception does not address solicitation. *See* 18 U.S.C. § 2721(b)(4), (14).  Additionally, while it may be argued that the North Carolina statute DeMayo Defendants rely upon authorizes the disclosure of some information, *see* N.C. Gen. Stat. 20-166.1(i) ("The Division must give a certified copy of one of these reports to a member of the general public who requests a copy and pays the fee set in G.S. 20-42."), it makes no mention of the conduct Plaintiffs allege in their Second Amended Complaint, namely that Defendants "market[ed] their services to accident victims."  (ECF No. 100 ¶ 72.)

Plaintiffs have submitted evidence that plausibly alleges DeMayo Defendants mailed advertising materials to solicit Plaintiffs' business, and DeMayo Defendants have provided no evidence of an authorization of solicitation under North Carolina state law. Thus, the Court again declines to dismiss this case under DPPA exception (b)(14).

## C. Definition of a Motor Vehicle Record

Finally, DeMayo Defendants argue that liability under the DPPA only attaches when a defendant "obtains, discloses or uses personal information from the [motor vehicle] record." (ECF No. 112 at 6.) They allege, however, that "neither the DMV-349 nor a driver's license card or registration paper is a 'motor vehicle record' as defined by the DPPA when they are in the possession of the motorist." (*Id.* at 7.)

This argument likewise echoes one made earlier by both sets of Defendants in the previous motions to dismiss. (*See* ECF Nos. 22 at 20–21; 24 at 19–22.) In denying Defendants' first motions to dismiss, the Court agreed with Plaintiffs that "even if the Court views a DMV-349 to not be a motor vehicle record . . . it is the DPPA protected 'personal information' that is important and not the specific records or form in which that information may happen to be contained." (ECF No. 35 at 16–17 (quoting ECF No. 26 at 31).) Further, the Court found the First Amended Complaint's alleged obtainment and use of Plaintiffs' "*names and addresses* for an impermissible use is sufficient to plausibly state a claim for relief under the DPPA." (*Id.* at 17 (citing *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004, 1006 (N.D. Ill. 2015).)

Given that neither the operative facts nor the critical allegations in the operative Complaint in this case have changed in any significant way, the Court concludes—as it did in

22

responding to motions to dismiss the First Amended Complaint—that Defendants' motion to dismiss on this basis will likewise be denied.

**D.    Conclusion**

The Court concludes that Plaintiffs have set forth sufficient facts to plausibly allege a violation of the DPPA. Accordingly, DeMayo Defendants' motion to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim will be denied.

## ORDER

IT IS THEREFORE ORDERED that the Farbman Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, (ECF No. 113), is GRANTED as to the dismissal of Plaintiffs' claim for injunctive relief and DENIED as to whether Plaintiffs have plausibly alleged Article III standing and the availability of liquidated damages.

IT IS FURTHER ORDERED that the DeMayo Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, (ECF No. 111), is DENIED.

This, the 28th day of September 2020.

/s/Loretta C. Biggs
United States District Judge